IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARK ANDREWS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:15-cv-502-WKW-PWG |
| ) | |
| STATE OF ALABAMA, ) | |
| 187TH FIGHTER WING, FIRE ) | |
| DEPARTMENT, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Mark Andrews, an employee of the State of Alabama Military Department ("SMD"),[1] alleges that he was subjected to racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. This matter is before the court on the SMD's motion for summary judgment. (Doc. 16). The motion is fully briefed and taken under submission on the record and without oral argument. For the reasons stated herein, the motion for summary judgment will be **GRANTED**.

---

[1] In his complaint, Plaintiff lists the defendant as the "State of Alabama, 187th Fighter Wing, Fire Department." (Doc. 1 at 1). In connection with its summary judgment motion, however, Defendant refers to itself as the SMD. (Doc. 17 at p. 1). Plaintiff, in turn, lists Defendant in his response's caption as "the State of Alabama, State Military Division." (Doc. 22 at p. 1). It appears that the proper defendant in this action should be the SMD. No amendment, however, has been sought or granted with respect to Defendant's name. The Court nevertheless will reference Defendant in this case as "the SMD."

## I. JURISDICTION

Subject matter jurisdiction is conferred by 28 U.S.C. § 1331 as to Plaintiff's federal cause of action. The parties do not contest personal jurisdiction or venue, and the court finds sufficient information of record to support both. *See* 28 U.S.C. § 1391. On August 5, 2015, the above-styled matter was referred to the undersigned for review by Chief United States District Judge W. Keith Watkins. (Doc. 9); *see also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party

has met its burden, Rule 56 requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. "Where 'the adverse party does not respond, summary judgment, *if appropriate*, shall be entered against the adverse party.' Fed. R. Civ. P. 56(e) (emphasis added). Thus, summary judgment, even when unopposed, can only be entered when 'appropriate.'" *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). When opposing a motion for summary judgment, however, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. "If the evidence [presented by the nonmoving party to rebut the moving party's evidence]

is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (internal citations omitted).

### III. BACKGROUND AND STATEMENT OF MATERIAL FACTS

The SMD is the agency responsible for the administration of the Alabama National Guard. (Doc. 18-1 at p. 1). Plaintiff, a Caucasian male, was employed at all relevant times by the SMD as a Fire Fighter/Driver Operator, Class 11681, at the Dannelly 187th Fighter Wing Fire Station in Montgomery, Alabama. (Doc. 18-1 at pp. 1-2).

Plaintiff was employed by the SMD through the merit system which is administered by the State of Alabama Personnel Department ("APD"). (Doc. 18-1 at p. 1). A person seeking initial employment to a merit system job, such as Fire Fighter/Driver Operator, Class 11681, must: (1) submit an application for examination form to the State of APD; (2) take a scheduled examination; and (3) be evaluated along with the other applicants to be placed upon a Certification of Eligibles from which agencies can hire new employees. (Doc. 18-1 at p. 1). Employees seeking to be promoted within the state agency follow a similar process by first submitting an application for examination form to the APD. (Doc. 18-1 at p. 1). These employees then "either take an examination or in some instances, their work history and education is evaluated to rank the applicants on the certification of

eligibles from which the agency can select employees to promote. (Doc. 18-1 at p. 1).

APD guidelines provide that, when an agency seeks to fill a vacancy through initial hire or promotion, the director of the agency requests a Certification of Eligibles from the APD. (Doc. 18-2 at p. 9). The Certification of Eligibles lists the ten highest scoring applicants for the position plus the names of those applicants who are tied with the tenth highest score. (Doc. 18-2 at p. 9). Under Rule 670-X-9-.03(2)(b) of the APD guidelines, the appointing authority in the agency may pick from any one of the ten highest scoring applicants on the Certification of Eligibles. (Doc. 18-1 at p. 4; Doc. 18-2 at p. 9). Employment or promotion from the Certification of Eligibles must be made within ten days of receiving the certification. (Doc. 26-1 at p. 2).

SMSgt Wiley Porterfield, an African-American male, was employed at all relevant times as the Fire Chief for the Fire Station at Dannelly Field. (Doc. 18-1 at p. 2). While he is not a state employee, he acted as the sole hiring authority for the firefighters at the Dannelly Field Fire Station.[2] (Doc. 18-1 at p. 2; Doc. 26-1 at p. 3). Since his appointment to the Fire Chief position in October 2012, until January 29,

---

[2] At all relevant times, Chief Porterfield was a member of the Alabama Air National Guard serving on active duty. (Doc. 18-9 at p. 1). The SMD indicates, however, that Chief Porterfield has retired, effective May 1, 2016. (Doc. 17 at p. 4).

2015, six individuals were either employed or promoted by Chief Porterfield. (Doc. 18-1 at p. 2). Five of these six individuals are Caucasian, while one individual is African-American. (Doc. 18-1 at p. 2). These six employment actions are detailed as follows:

(1) Terry O. Williams, a Caucasian male, was appointed on March 4, 2014, as Fire Fighter/Driver Operator. (Doc. 18-3). The candidates on the Certificate of Eligibles consisted of two Caucasian males. (Doc. 18-3).

(2) Joshua A. Watson, a Caucasian male, was appointed on April 1, 2014 as Fire Fighter/Driver Operator. (Doc. 18-4). The candidates on the Certificate of Eligibles consisted of five Caucasian applicants and six African-American applicants. (Doc. 18-4).

(3) Steven D. Quates, a Caucasian male, was appointed on April 16, 2014 as Fire Fighter/Driver Operator. (Doc. 18-5). He was the only candidate on the Certificate of Eligibles. (Doc. 18-5).

(4) Richard D. Sanders, a male, was promoted on June 16, 2014 to Fire Fighter/Assistant Chief. (Doc. 18-6). The candidates on the Certificate of Eligibles consisted of five Caucasian applicants, including Plaintiff. (Doc. 18-6).

(5) Jeffrey S. Stubbs, an African-American male, was promoted on July 1, 2014 to Fire Fighter/Crew Leader. (Doc. 18-7). The candidates on the Certificate of Eligibles, dated June 12, 2014, consisted of ten candidates with Mr. Stubbs being the only African-American candidate. (Doc. 18-7). Plaintiff was ranked No. 6 on the list while Mr. Stubbs was ranked No. 9. (Doc. 18-7).

(6) Bradley J. Sinclair, a Caucasian Male, was promoted on August 1, 2014 to Fire Fighter/Assistant Chief. (Doc. 18-8). The

>candidates on the Certificate of Eligibles consisted of four Caucasian applicants, including Plaintiff. (Doc. 18-8).

With regard to the various positions sought by Plaintiff, Chief Porterfield testified that:

>[Plaintiff] was interviewed June []6, 2014 through an extensive interview promotional board process and was considered for 11683 Firefighter/Crew Leader and 11685 Firefighter/Assistant Chief positions. However, [Plaintiff] does not have computer access to the government system, which is a requirement according to the [Master Cooperative Agreement ("MCA")][3] to perform the duties for each position. Once [Plaintiff] is granted access to the government network and able to effectively perform the duties of each position then he would be considered again for promotion.

(Doc. 18-9 at p. 4). Before his promotion, Mr. Stubbs possessed a Common Access Card ("CAC") which allowed him access to "U.S. Government computers and networks used by the Alabama National Guard." (Doc. 26-2 at pp. 1-2).

On November 27, 2014, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging racial discrimination with respect to the decisions not to promote him to either the Assistant Chief or Crew Leader positions. Plaintiff asserts that "[a] Black male co-worker much less qualified than me was promoted to the Crew Leader position." (Doc. 18-10

---

[3] The MCA " is the agreement entered between the United States and the State of Alabama that governs how federal funds will be used by the Alabama National Guard." (Doc. 18-9 at p. 2 n.1).

7

at p. 2). Plaintiff has submitted various EEOC intake documents in which he explains that the promotional process was "unfair and inconsistent" with respect to the promotion of Richard Saunders over him to one of the Assistant Chief positions. (Doc. 25-3 at pp. 6-7). Plaintiff further states that Mr. Stubbs did not deserve to be promoted over him because: (1) Mr. Stubbs was not a top ten candidate for the Crew Leader position; (2) Mr. Stubbs "has virtually no firefighting or emergency scene experience; (3) Chief Porterfield personally interviewed with Mr. Stubbs while Plaintiff was not interviewed; and (4) Plaintiff had acted for over a year as a supervisor in the absence of a Crew Leader. (Doc. 25-3 at pp. 5-6).

Effective February 1, 2015, Chief Porterfield promoted Plaintiff and two other Caucasian individuals from a Certificate of Eligibles list containing ten candidates. (Doc. 18-11 at pp. 1-2; Doc. 25-3 at p. 7). Nevertheless, on July 15, 2015, Plaintiff filed a complaint in this court, alleging that he was subject to race-based discrimination in connection with the decisions not to promote him in 2014. (Doc. 1 at pp. 1-2).[4]

---

[4] Plaintiff alleges in his complaint that "[t]he Defendant has created a hostile work environment claim after learning of the Plaintiff's concerns that has caused the Plaintiff to suffer harm." (Doc. 1 at p. 2). However, Plaintiff does not raise a cause of action for hostile work environment in his complaint. Rather, Plaintiff's complaint asserts only a discrimination claim of disparate treatment based upon his failure to be promoted. (Doc. 1 at p. 2). Other than an isolated statement in his response to the summary judgment motion that Chief Porterfield was racially hostile to him and other Caucasians (Doc. 22 at p. 4), Plaintiff likewise makes no arguments and cites no case law in support of a hostile work environment claim.

## IV. DISCUSSION

Plaintiff's claims for disparate treatment are based on the SMD's failure to promote him in 2014 to the positions of either Assistant Chief or Crew Leader. Plaintiff has presented no direct evidence of racial discrimination, and the parties instead rely on circumstantial evidence.

Federal courts typically evaluate the sufficiency of circumstantial evidence using some variant of the well-known framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See also St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). Under the *McDonnell Douglas* framework, the plaintiff is required to create an inference of discrimination through his or her *prima facie* case. *McDonnell Douglas*, 411 U.S. at 802. As Justice O'Connor observed in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), "the entire purpose of the *McDonnell Douglas prima facie* case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by." 490 U.S. at 271 (O'Connor, J., concurring).

Once the employee has established a *prima facie* case of disparate treatment, the burden of production, but not of persuasion, shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Vessels*

9

*v. Atlanta Indep. Sch. Sys.,* 408 F.3d 763, 770-71 (11th Cir. 2005). The employee's burden involves no credibility determination and is "exceedingly light," but it does require the employer to articulate a "clear and reasonably specific" non-discriminatory basis for its decision. *Id.* at 770 (quoting *Burdine,* 450 U.S. at 258).

After the employer meets its burden to produce a non-discriminatory reason for its actions, the presumption of discrimination is eliminated. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142–43 (2000). The burden then shifts to the employee to prove the employer's proffered reason was a pretext for discrimination. *Id.*

### 1. *Prima Facie* Case

To establish a *prima facie* case of racial discrimination under the *McDonnell Douglas* framework in the context of a failure-to-promote claim, "the plaintiff must demonstrate that: (I) he or she belongs to a protected class; (ii) he or she was qualified for and applied for a position that the employer was seeking to fill; (iii) despite qualifications, he or she was rejected; and (iv) the position was filled with an individual outside the protected class." *Vessels v. Atlanta Indep. Sch. Sys.,* 408 F.3d 763, 768 (11th Cir. 2005). The SMD does not specifically challenge whether Plaintiff can establish a prima facie case of racial discrimination and "assumes that the Plaintiff can prove" such a case. (Doc. 17 at p. 15).

A review of the record reveals that sufficient evidence has been presented to establish each element of Plaintiff's *prima facie* case of racial discrimination with respect to the promotion of Mr. Stubbs, an African-American male, over Plaintiff to the position of Crew Leader. Plaintiff, however, cannot establish a *prima facie* case of racial discrimination with respect to the respective promotions of Mr. Saunders and Mr. Sinclair to assistant chief positions over Plaintiff as these two individuals are not individuals outside the protected class. It is undisputed that both Mr. Saunders and Mr. Sinclair, like Plaintiff, are Caucasian males. Because Plaintiff has established a *prima facie* case of disparate treatment only with respect to the promotion of Mr. Stubbs, the court will proceed to the next step of the *McDonnell Douglas* framework as to this failure-to-promote claim.

### 2.  Legitimate, Non-Retaliatory Reason for its Actions

The SMD must now satisfy its light burden of articulating legitimate, non-discriminatory reasons for not promoting Plaintiff in 2014 to the position of Crew Leader. The evidence presented by the SMD establishes that: (1) Mr. Stubbs was ranked 9th on the Certificate of Eligibles, dated June 12, 2014, pertaining to the Crew Leader position; and (2) Chief Porterfield promoted Mr. Stubbs to the Crew Leader position. (Docs. 18-7). Chief Porterfield's selection of Mr. Stubbs complied with APD Rule 670-X-9-.03(2)(b), since he had the authority to pick from any one of the

11

ten highest scoring applicants on the Certification of Eligibles. (Doc. 18-1 at p. 4; Doc. 18-2 at p. 9).

Furthermore, Chief Porterfield testified that Plaintiff did not have access to the government's computer system, which was a requirement to fulfil the position of Crew Leader. (Doc. 18-9). In contrast, Mr. Stubbs possessed a CAC which allowed him access to the government computer system. (Doc. 26-2 at pp. 1-2). Based on this evidence, the SMD has met its "exceedingly light" burden of articulating legitimate, non-discriminatory reasons for its failure to promote Plaintiff to the position of Crew Leader in 2014.

### 3. Pretext

"To survive summary judgment, the employee must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination." *Vessels,* 408 F.3d at 771 (citation omitted). A reason is not pretext for discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Hicks*, 509 U.S. at 515 (emphasis in original). *See also Chapman*, 229 F.3d at 1030 (stating the plaintiff must meet each proffered reason "head on," and cannot succeed by simply disputing the wisdom of the employer's proffered reasons). "A plaintiff will withstand summary judgment by

demonstrating that 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find unworthy of credence.'" *Baker v. Russell Corp.*, 372 F. App'x 917, 920 (11th Cir. 2010) (quoting *Jackson v. State of Alabama State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)).

With regard to failure-to-promote claims, an employee cannot prove pretext by simply arguing or showing that he was better qualified than the person who received the position. *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007). Rather, the employee must show not merely that the employer's decision was mistaken but that it was in fact motivated by race. *Id.* "Furthermore, a plaintiff must show that the disparities between the successful applicant's and his own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Id.* (internal quotations and citations omitted).

In an effort to show pretext, Plaintiff has submitted his own affidavit, an affidavit prepared by Tony Freeman,[5] and EEOC intake documents which include a

---

[5] Tony Freeman states in his affidavit that he is currently employed by the SMD as a firefighter with the 187th Fighter Wing. (Doc. 25-4 at p. 1). Mr. Freeman has filed a related action against the SMD in which he asserts similar claims of racial discrimination based on Chief Porterfield's promotion of Mr. Stubbs over both Plaintiff and Mr. Freeman. (*See Freeman v. State of Alabama, 187th Fighter Wing, Fire Department*, No. 2:15-cv-501-AKK-PWG).

narrative statement prepared by Plaintiff. (Docs. 25-2, 25-3, and 25-4). The SMD first asserts that both Plaintiff's and Mr. Freeman's affidavits are inadmissible as they were not made pursuant to 28 U.S.C. § 1746. (Doc. 26 at p. 3). The court agrees.

Both affidavits fail to satisfy the requirements of § 1746 for unsworn statements as they do not include a statement that each affiant declares under penalty of perjury that the statements contained within the affidavit are true and correct. *See* 28 U.S.C. § 1746. Thus, the unsworn statements contained within the affidavits of Plaintiff and Mr. Freeman may not be considered in ruling on the pending summary judgment motion. *See Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003); *Petty v. United Plating, Inc.*, No. CV-09-S-1465-NE, 2012 WL 2047532, at *2 n.15 (N.D. Ala. May 31, 2012).

The SMD also challenges the EEOC intake documents submitted by Plaintiff as containing unsworn statements of which Plaintiff did not have personal knowledge. (Doc. 26 at p. 3). Plaintiff's narrative statement attached to the EEOC intake document contains unsworn statements that fail to meet the requirements of Federal Rule of Civil Procedure 56(e). *See Petty*, 2012 WL 2047532, at *2 ("The fact the unsworn statements are contained in the EEOC file does not render them admissible."); *Wells v. XPEDX*, No. 8:05-CV-2193-T-EAJ, 2007 WL 2696566, at *11 (M.D. Fla. Sept. 11, 2007) ("[T]he EEOC documents Plaintiff provides in support of

14

his response are not properly authenticated, attached to any supporting affidavit or otherwise verified. The documents are also inherently inadmissible. Thus, this court may not consider such evidence in evaluating the motion for summary judgment."). Accordingly, the court need not consider the EEOC intake documents when ruling on the summary judgment motion.

Even if the court were to consider the evidence submitted by Plaintiff, he has failed to demonstrate that the SMD's legitimate, non-discriminatory reasons for its failure to promote Plaintiff were pretext to discrimination. Plaintiff states that: (1) he was ranked sixth on the Certificate of Eligibles while Mr. Stubbs was not even on the first ranking list for the Crew Leader position that ultimately was dismissed by Chief Porterfield; (2) Plaintiff was not interviewed by Chief Porterfield for the Crew Leader position while Mr. Stubbs was personally interviewed by Chief Porterfield; (2) Chief Porterfield compiled a second list where Mr. Stubbs was ranked 13th; and (4) Mr. Stubbs was promoted to Crew Leader despite the fact that Plaintiff had more experience as a firefighter and had a better reputation and more respect in the Firehouse. (Doc. 25-2 at p. 1; Doc. 25-3 at p. 6).

Other than his conclusory statement in his affidavit, Plaintiff presents no evidence to demonstrate that Chief Porterfield ever "killed" an initial list for the Crew Leader promotion or that Mr. Stubbs was ranked as low as 13th on the second list.

15

According to Toni Middleton, a Personnel Officer for Defendant, employment or promotion for a list of Certificate of Eligibles must occur within ten days or the certificate expires. (Doc. 26-1 at p. 2). Mr. Middleton, however, found no record of such an initial list existing with respect to the Crew Leader position at Dannelly Field. (Doc. 26-1 at p. 3). The SMD has submitted a Certificate of Eligibles, dated June 12, 2014, consisting of ten candidates where Plaintiff was ranked No. 6 on the list and Mr. Stubbs was ranked No. 9. (Doc. 18-7). Under Rule 670-X-9-.03(2)(b) of the APD guidelines, Chief Porterfield was authorized to promote either Plaintiff or Mr. Stubbs to the Crew Leader position. (Doc. 18-1 at p. 4; Doc. 18-2 at p. 9).

Plaintiff otherwise presents no evidence to demonstrate that Chief Porterfield's reasons for promoting Mr. Stubbs were false and that racial discrimination was the real reason. At the time of Chief Porterfield's decision to promote Mr. Stubbs over Plaintiff, it is undisputed that Plaintiff lacked access to the government's computer system and that Mr. Stubbs possessed a CAC which allowed him such access. (Doc. 26-2 at pp. 1-2). Furthermore, since his appointment to the Fire Chief position in October 2012, until January 29, 2015, Chief Porterfield made six employment decisions in which five Caucasian individuals were employed or promoted. (Doc. 18-1 at p. 2). In one of these decisions, a Caucasian individual was selected from a

16

Certificate of Eligibles that included six African-American applicants. (Doc. 18-1 at p. 2; Doc. 18-4).

In attempting to describe the hiring process as unfair,[6] Plaintiff comes forward with no evidence to demonstrate any kind of significant disparity between his and Mr. Stubbs's respective qualifications. Indeed, with regard to the employment decision to promote Mr. Stubbs to Crew Leader, the Certificate of Eligibles reflects that Plaintiff's grade was 89.86 while Mr. Stubbs's grade is just .09 less at 89.77. (Doc. 18-7). Plaintiff's statements that he was more qualified than Mr. Stubbs for the Crew Leader position, at best, constitute evidence that Chief Porterfield's decision was mistaken rather than motivated by race.

In sum, even when construing the evidence in the light most favorable to Plaintiff, he has not come forward with sufficient evidence to lead a reasonable factfinder to conclude that Chief Porterfield's legitimate, non-discriminatory reasons for promoting Mr. Stubbs were not its true reasons, but were instead a pretext for racial discrimination. *See Vessels,* 408 F.3d at 771. Accordingly, the SMD's motion for summary judgment is due to be granted.

---

[6] In his narrative attached to the EEOC intake documents, Plaintiff vigorously complains about Chief Porterfield's hiring process in promoting two Caucasian individuals, Mr. Saunders and Mr. Sinclair to Assistant Chief positions. (Doc. 25-3 at pp. 5-7). Even if this narrative could be considered admissible evidence, Plaintiff fails to show how such evidence could establish any racial motivation on the part of Chief Porterfield in his employment actions.

## V. CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons as stated, it is the **RECOMMENDATION** of the Magistrate Judge that the SMD's motion for summary judgment (Doc. 16) is due to be **GRANTED** in its entirety as to Plaintiff's racial discrimination claim.

It is **ORDERED** that the parties shall file any objections to the said Recommendation on or before **September 6, 2016.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this 22nd day of August, 2016.

                                                     /s/ Paul W. Greene
                                                United States Magistrate Judge